

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
NOV 1 8 2005
J. T. NOBLIN, CLERK
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**WACHOVIA BANK, NATIONAL ASSOCIATION**
**SUCCESSOR BY MERGER TO SOUTHTRUST BANK**                    **PLAINTIFF**

**V.**                                         CIVIL ACTION NO. _3:05cv698HTW-JCS_

**CONGRESS STREET PROPERTIES, LLC; NORTHGATE**
**PROPERTIES, LLC; AND ISAAC K. BYRD, JR.**                    **DEFENDANTS**

### COMPLAINT

COMES NOW, Wachovia Bank, National Association, successor by merger to SouthTrust

Bank, and files its Complaint against Defendants Congress Street Properties, LLC; Northgate

Properties, LLC; and Isaac K. Byrd, Jr, and in support thereof would state unto the Court as follows:

### PARTIES

1.      Plaintiff Wachovia Bank ("Wachovia") is a national banking association organized

and existing under the laws of the State of North Carolina, with its principal place of business in the

State of North Carolina.  Wachovia is the successor by merger to SouthTrust Bank ("SouthTrust").

2.      Defendant Congress Street Properties, LLC ("Congress Street"), is a limited liability

company organized and existing under the laws of the State of Mississippi and having its principal

place of business in the State of Mississippi.  Congress Street may be served by serving its managing

member, Defendant Isaac K. Byrd, Jr., who may be served with process at Byrd & Associates, PLLC,

427 E. Fortification Street, Jackson, Mississippi 39202.

3.      Defendant Northgate Properties, LLC ("Northgate"), is a limited liability company

organized and existing under the laws of the State of Mississippi and having its principal place of

business in the State of Mississippi. Northgate may be served by serving its managing member,

Defendant Isaac K. Byrd, Jr., who may be served with process at Byrd & Associates, PLLC, 427 E. Fortification Street, Jackson, Mississippi 39202.

4.      Defendant Isaac K. Byrd, Jr., ("Byrd") is an individual adult resident of the State of Mississippi, currently residing in Hinds County, Mississippi, who may be served with process at Byrd & Associates, PLLC, 427 E. Fortification Street, Jackson, Mississippi 39202.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this proceeding under diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the Plaintiff and the Defendants are completely diverse and the amount in controversy exceeds $75,000.00.

6.      This Court has personal jurisdiction over the Defendants as Defendants Congress Street and Northgate are limited liability companies located in, residents of, and conducting business in the State of Mississippi, and Defendant Byrd is an individual residing in, and conducting business within, the State of Mississippi.

7.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(a)(2), as a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in Hinds County, Mississippi. Specifically, the Plaintiff's claims arise from the breach of a Forbearance Agreement entered into between the parties, the terms of which provide for performance, in whole or in part, by the Defendants in Hinds County, Mississippi. A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit "A." The Forbearance Agreement further provides for the terms of such agreement being enforceable in state or federal courts residing in Hinds County, Mississippi. Ex. A., ¶ 24.  Additionally, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), as Defendants Congress Street and Northgate maintain their home office and principal places of

business in Hinds County, Mississippi, and Defendant Byrd resides in Hinds County, Mississippi.

## THE FORBEARANCE AGREEMENT

8.    The Plaintiff and the Defendants entered into the Forbearance Agreement on or about March 17, 2005. Ex. A. The Forbearance Agreement relates to several loans originally entered into between the Plaintiff's predecessor, SouthTrust, and Defendants, and subsequent defaults under the terms of the loans. As set forth herein, the Plaintiff's claims are brought regarding default under two of these loans: (1) an April 29, 2002, Promissory Note, Loan Number 0000000018, signed by Defendant Congress Street, and guaranteed by a Commercial Guaranty signed by Defendant Byrd and (2) a September 29, 2004, Promissory Note, Loan Number 0000000042, signed by Defendants. See true and correct copies of the Promissory Notes and Commercial Guaranty attached hereto as Exhibits "B" and "C."

9.    The parties entered into the Forbearance Agreement with the express acknowledgment that "there [were] conditions of default existing with reference to the payments to be made" on the Defendants' loans. Ex. A, ¶ A. Under the terms of the Forbearance Agreement, in exchange for good and valuable consideration, the Plaintiff agreed to forbear from exercising certain remedies available to it under the loan agreements due to the default, including the continuation of foreclosure proceedings, subject to certain conditions, during the Forbearance Period. Ex. A, ¶ 5. The Defendants further acknowledged that they had "no defense, counterclaim, offset, cross complaint, claim or demand of any kind or nature whatsoever (collectively, the "Claims") that can be asserted to reduce or eliminate all or any part of their liability to repay any indebtedness to the Lender or seek affirmative relief for damages of any kind or nature from the Lender, which Claims arise out of or are related to the Obligors' relationship with the Lender." Ex. A, ¶ 4.

3

10.     The Forbearance Agreement provides, "At the close of the Forbearance Period, the Obligors [Defendants] shall pay any and all remaining Obligations in full, including, without limitation, all accrued and accruing interest, fees and charges, including attorneys' fees and other costs incurred in connection with this Agreement." Ex. A, ¶ 6(c). Under the terms of the Forbearance Agreement, the Forbearance Period expired on June 15, 2005. Ex. A, ¶ 5(b).

11.     The Plaintiff fully and completely performed its obligations under the Forbearance Agreement, including forbearing from exercising its legal remedies under the loan agreements. However, despite repeated requests by the Plaintiff, the Defendants have failed to tender the amount of their remaining Obligations in full, which includes the principal unpaid balance remaining under the loan agreements, interest, fees and charges, and attorneys' fees and costs. As of November 2, 2005, the total remaining amount of Obligations under the Forbearance Agreement was $1,797,105.78.

### LOAN HISTORY

12.     The Plaintiff's claims regarding the Forbearance Agreement arise from two prior loans entered into between the Plaintiff's predecessor, SouthTrust, and the Defendants. On April 29, 2002, SouthTrust entered into a loan agreement with Defendant Congress Street for a sum of $618,000.00, Loan Number 0000000018, with a maturity date of April 29, 2007. Ex. B-1. The Note was secured by a First Deed of Trust dated April 29, 2002 on 939 President Street, Jackson, Mississippi; and Assignment of Rents & Leases dated April 29, 2002. Defendant Byrd also signed a Commercial Guaranty for the Note on April 29, 2002. Ex. B-2. As of November 2, 2005, the remaining and delinquent balance under the loan, including unpaid principal, interest, and fees was $449,740.21.

4

13.    On September 29, 2004, SouthTrust entered into a loan agreement with Defendants Congress Street, Northgate and Byrd for a sum of $1,308.333.41, Loan Number 0000000042, with a maturity date of September 29, 2005.[1] Ex. C. Defendant Byrd signed said Promissory Note individually, as well as on behalf of Congress Street as its Managing Member and on behalf of Northgate as its Managing Member. The Note was secured by a Deed of Trust dated May 2, 2002 on Commercial Property located at 4330 and 4436 North State Street, Jackson, Mississippi; a Modification of Deed of Trust dated June 16, 2004; and Modification of Deed of Trust dated September 29, 2004; Deed of Trust dated April 29, 2002 on Commercial Property located at 939 North President Street, Jackson, Mississippi; Assignment of Rents and Leases dated September 29, 2004 on property located at 4330 and 4436 North State Street, Jackson, Mississippi and Assignment of Rents and Leases dated September 29, 2004 on property located at 939 North President Street, Jackson, Mississippi. As of November 2, 2005, the remaining and delinquent balance on the loan, including unpaid principal, interest, and fees was $1,326,582.01.

14.    Each of the Notes (Exhibits B-1 and C) states that the borrowers will be in default upon failure "to make any payment when due under this loan." Defendants defaulted under both loan agreements by failing to timely make payments under the loan agreements.

15.    Despite notice of their default, the Defendants failed to make timely payments on the loans. The Defendants also failed to pay taxes to Hinds County Tax Collector due on February 1, 2005. Consequently, on February 18, 2005, a Substitute Trustee's Notice of Sale was printed in the legal notice section of *The Clarion-Ledger*, wherein the Plaintiff noticed a public auction of the properties securing the Defendants' loans scheduled to take place on March 15, 2005. Subsequent

---

[1] The September 29, 2004, loan was the refinancing of a previous loan.

to the actions by the Plaintiff with regard to foreclosure proceedings, the Defendants entered into the Forbearance Agreement, and the Plaintiff halted the foreclosure proceedings and otherwise performed pursuant to its obligations under the Forbearance Agreement.

### Count I

### BREACH CONTRACT - THE FORBEARANCE AGREEMENT

16.     The Plaintiff incorporates and realleges all preceding paragraphs by reference.

17.     Despite the Plaintiff's requests, the Defendants have breached the Forbearance Agreement with Plaintiff by failing to tender the full amount of their remaining Obligations, including, without limitation, all accrued and accruing interest, fees and charges, including attorneys' fees and other costs incurred in connection with this Agreement on or after June 15, 2005, the date when the Forbearance Period expired. As of November 2, 2005, the total amount of remaining obligations under the Forbearance Agreement was $1,797,105.78.

18.     Furthermore, under the terms of the Forbearance Agreement, the Defendants admitted to defaulting under the terms of the loans, and specifically waived any and all defenses, offsets, and counterclaims for their liability to the Plaintiff under the loan agreements.  See Ex. A, ¶ A and ¶ 4.

### Count II

### BREACH OF CONTRACT - APRIL 29, 2002, PROMISSORY NOTE, LOAN NUMBER 0000000018

19.     Without waiving any of its rights under the Forbearance Agreement, and while preserving same, the Plaintiff incorporates and realleges all preceding paragraphs by reference.

20.     Congress Street has failed to timely make payments owed to the Plaintiff under its Promissory Note, Loan Number 0000000018, entered into on April 29, 2002.  Ex. B-1.  Further,

because Byrd signed a Commercial Guaranty on April 29, 2002, Byrd is jointly and severally liable for all amounts owed under the Note.  Ex. B-2.  As of November 2, 2005, the remaining and delinquent balance under the loan, including unpaid principal, interest, and fees was $449,740.21.

21.    Furthermore, the Notes also provide that default will occur if "Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between the Lender and the Borrower."  Because Congress Street failed to comply with the terms of the Forbearance Agreement, it has defaulted under the terms of the Note.

22.    The Note states, "Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued interest immediately due, and then Borrower will pay that amount." Despite the Plaintiff's demand for payment of the full amount under the Note, Congress Street and Byrd have failed to make such payment.   Accordingly, they breached their contract(s) with the Plaintiff, and the Plaintiff is entitled to a judgment against them.

### Count III

### BREACH OF CONTRACT - APRIL 29, 2002, PROMISSORY NOTE, LOAN NUMBER 0000000018

23.    Without waiving any of its rights under the Forbearance Agreement, and while preserving same, the Plaintiff incorporates and realleges all preceding paragraphs by reference.

24.    Congress Street, Northgate and Byrd have failed to timely make payments owed to the Plaintiff under their Promissory Note, Loan Number 0000000042, entered into on  September 29, 2004. As of November 2, 2005, the remaining and delinquent balance on the loan, including

7

unpaid principal, interest, and fees was $1,326,582.01. The Note states the Borrower defaults on the Note if the Borrower "fails to make any payment when due under this Note." Accordingly, Defendants defaulted under the terms of the Note.

25.    Furthermore, the Note also provides that default will occur if "Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between the Lender and the Borrower." Because the Defendants have failed to comply with the terms of the Forbearance Agreement, they have defaulted under the terms of the Note.

26.    The Notes state, "Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued interest immediately due, and then Borrower will pay that amount." Despite the Plaintiff's demand for payment of the full amount under the Note, the Defendants Congress Street and Byrd have failed to do so. Accordingly, they breached their contracts with the Plaintiff, and the Plaintiff is entitled to a judgment against them.

27.    Additionally, this loan fully matured on September 29, 2005, therefore, on that date, the Defendants became liable for the full unpaid amount under the loan.

28.    Despite the Plaintiff's demand for the Defendants to pay the full amount under the Note, the Defendants have failed to make such payment. Accordingly, the Defendants have breached their contract with the Plaintiff, and the Plaintiff is entitled to a judgment against the Defendants.

## DAMAGES

29.    Under the terms of the Forbearance Agreement and Loan Agreements, Plaintiff is owed by the Defendants individually, collectively and/or jointly and severally an amount including,

8

but not necessarily limited to, all unpaid principal under the loans, interest, pre- and post-judgment interest, costs, and attorneys' fees.

30    In accordance with the terms of the Forbearance Agreement, wherein the Defendants contractually waived any right to a jury trial arising out of the Forbearance Agreement, the Plaintiff does not request a jury trial of this matter.

WHEREFORE, PREMISES CONSIDERED, Wachovia Bank, National Association, successor by merger to SouthTrust Bank, requests that this Court enter a judgment, in favor of the Plaintiff and against the Defendants, individually, collectively, and/or jointly and severally, for all unpaid principal under the loans, interest, pre- and post-judgment interest, costs, attorneys' fees, and for all such other and/or additional relief as this Court deems appropriate.

Respectfully submitted,

**WACHOVIA BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO SOUTHTRUST BANK**

By: _____
Robert H. Walker (MSB# 6890)
Kevin A. Rogers (MSB# 101230)
Its Attorneys

OF COUNSEL:
WELLS MARBLE & HURST, PLLC
317 E. Capitol Street
600 Lamar Life Building
Post Office Box 131
Jackson, Mississippi 39205-0131
Telephone: (601) 355-8321
Facsimile: (601) 355-4217

# FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** (the "<u>Agreement</u>"), is dated as of this the 15th day of March, 2005 (the "<u>Effective Date</u>"), by and among **WACHOVIA BANK, NATIONAL ASSOCIATION,** successor by merger to SouthTrust Bank (the "<u>Lender</u>") and **CONGRESS STREET PROPERTIES, LLC,** a Mississippi limited liability company, **NORTHGATE PROPERTIES, LLC,** a Mississippi limited liability company **ISAAC K. BYRD JR,** an individual ("<u>Byrd</u>") (the "<u>Borrowers</u>"), **ISAAC K. BYRD JR,** individually and as cosigner for loans by Lender to other borrowers, Jessie L. Baldwin and Eddie Cotton Jr. (the "<u>Guarantor</u>"). The Borrowers and Guarantor are hereinafter referred to collectively as the "<u>Obligors</u>".

## Recitals

A.    As of the effective date, Borrowers and the Lender were parties to certain Business Loan Agreements, with such agreements including those referred to on Exhibit "A", which is attached hereto and incorporated by reference. As indicated on Exhibit "A", there are conditions of default existing with reference to the payments to be made and other Obligations of Borrowers with respect to these loans. As a result, Lender has initiated foreclosure proceedings in order to enforce and protect its rights with reference to these loans and the property securing the repayment of same.

B.    The Obligors have requested that the Lender forbear from exercising its rights under the Loan Documents with respect to any existing defaults, in order to provide Borrowers with additional time in which to satisfy the Obligations. The Lender is willing to forbear from taking immediate action, other than as indicated hereinafter, to collect the Obligations in accordance with the terms of the Loan Documents.

## Agreement

**NOW, THEREFORE,** for and in consideration of the foregoing recitals, the covenants herein set forth and confirmed, the mutual agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, the Lender and the Obligors agree as of the Effective Date as follows:

1.    **Acknowledgement of Recitals.** The Obligors and the Lender acknowledge and agree that the foregoing "Recitals" are true, and correct.

2.    **Acknowledgement of Obligations by the Obligors.**    The Borrowers and Guarantor acknowledge and agree that they are indebted to the Lender for repayment of all Obligations, including all accruing interest, costs, fees (including attorneys' fees) and expenses. The Borrowers hereby reaffirm and ratify the terms of the Loan Documents and acknowledge that they are enforceable in accordance with their terms. The Guarantor acknowledges that, as guarantor, he is obligated to the Lender for the repayment of all of the Obligations owed pursuant to the notes evidencing the loans made to Mr. Baldwin and to Mr. Cotton. The

01129470.1



EXHIBIT

A

Guarantor hereby reaffirms and ratifies the terms of the Loan Documents and acknowledges that they are strictly enforceable in accordance with their terms.

3.    **Acknowledgment of Security Interests**.  The Obligors acknowledge the validity and enforceability of the security interests granted in favor of the Lender, that the security interests are properly perfected and that the Lender holds a first-priority position in the Collateral, unless expressly set forth herein.  The Obligors further acknowledge that, except as expressly set forth herein, the Collateral has not been pledged as security under any security instrument to any party other than the Lender.  The Borrower agrees, at the request of the Lender, to execute and consent to the filing of any new or additional security agreements, Deeds of Trust or UCC-1 financing statements or any other documentation required to perfect, or continue the perfection of such security interests, consistent with any applicable law, including Article 9 of the Uniform Commercial Code.  The Borrowers agree to assist the Lender with the termination of any security agreements or filings associated with security interests (including UCC-1s) filed ahead of the Lender.

4.    **Acknowledgement of Lack of Defenses**.  The Obligors jointly and severally acknowledge that, as of the Effective Date, each has no defense, counterclaim, offset, cross complaint, claim or demand of any kind or nature whatsoever (collectively, the "<u>Claims</u>") that can be asserted to reduce or eliminate all or any part of their liability to repay any indebtedness to the Lender or seek affirmative relief for damages of any kind or nature from the Lender, which Claims arise out of or are related to the Obligors' relationship with the Lender.  To the extent that any such Claims exist as of the Effective Date, they are fully, forever and irrevocably released as provided in Paragraph 12 herein.

5.    **Forbearance**.

(a)    The Lender will forbear from exercising any remedies available to it under the Loan Documents (the "<u>Forbearance Period</u>") and will not seek collection of the Obligations from the Obligors, except as set forth herein; it being specifically agreed that Lender shall continue to have the right to collect rents as a result of any rent assignments previously made by Borrowers, or any of them, and to collect principal and interest payments and other charges associated with the loans as hereinafter set forth; provided, however, that the Forbearance Period shall terminate and the Lender shall be permitted to enforce or exercise any remedies available to it under the Loan Documents if: (i) any of the Obligors materially breaches, defaults, or fails to perform any obligation or agreement contained in this Agreement; (ii) any case or other proceeding is instituted by or against any of the Obligors under any state or federal law relating to the bankruptcy of debtors, including without limitation, the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*; (iii) any material and substantial default or event of default other than any Existing Defaults occurs under any of the Loan Documents as modified by this Agreement and all of the other documents executed in connection herewith; or (iv) any of the acknowledgments, warranties or representations of the Obligors set forth herein shall be untrue or inaccurate in any material respect as of the date made.  Each of the foregoing events is hereinafter referred to as a "<u>Terminable Event</u>."

01129470.1                                        2

(b)    Subject to the earlier termination set forth in this paragraph, and unless otherwise agreed to in writing by the Lender, the Forbearance Period will terminate on June 15, 2005.

6.    **Payments by the Obligors During and at Conclusion of Forbearance Period**.

(a)    **The Forbearance Fee**.  At the time of execution of this Forbearance Agreement, the Obligors shall be obligated to pay to the Lender a forbearance fee of $500.00 (the "Forbearance Fee"), which Forbearance Fee shall be fully earned as of the Effective Date.  The Forbearance Fee shall be payable in full on or before the Effective Date.

(b)    **Loan Payments**.  Except as otherwise provided herein, during the Forbearance Period, the Obligors will make all payments of  principal & interest as may be required or provided for by the Loan Documents.

(c)    **Payment in Full**.  At the close of the Forbearance Period, the Obligors shall pay any and all remaining Obligations in full, including without limitation, all accrued and accruing interest, fees and charges, including attorneys' fees and other costs incurred in connection with this Agreement.

7.    **Liquidation of Collateral Upon Termination of Forbearance Period**.  Upon the termination of the Forbearance Period or the earlier occurrence of a Terminable Event, the Obligors shall assist the Lender in the orderly liquidation of the Collateral, and acknowledge, the rights of, and will assist the Lender in the execution and implementation of its rights with regard to all remedies as may be allowed and provided by the Loan Documents and/or applicable law.

8.    **Conditions Precedent**.  As conditions precedent to the Lender's obligation to forbear hereunder, the Obligors agree as follows:

(a)    Contemporaneous with the execution of this Agreement and no later than Monday, March 21, 2005 the Obligors shall pay, or cause to be paid to Lender, a sum equal to all reasonable attorneys fees due and owing under the Loan Documents, including payment of all reasonable attorneys fees and expenses incurred by the Lender in the negotiation and drafting of this Agreement, all past due principal, interest and penalties (if any) associated with any of the subject loans (such sum, currently estimated by the parties to be approximately $53,000.00);

(b)    Contemporaneous with the execution of this Agreement and no later than Monday, March 21, 2005, the Obligors shall provide to the Lender updated/current proof of insurance listing the Lender as a Mortgagee as required by the Loan Documents relating to the real property securing the loans;

(c)    The Obligors shall execute any and all additional documents to effect the terms and conditions of this Agreement; and

(d)    The Obligors will execute, or cause to be executed, any and all documents requested by the Lender to effect the pledge of the security interests in the Collateral pledged under the Loan Documents to secure the Loans.

01129470.1                                                  3

Material and substantial failure of any condition precedent set forth in this Paragraph 9 shall constitute a default under the terms of this Agreement.

9.    **Strict Compliance.**  The Lender will require strict compliance with the terms set forth herein.  Should there be any default by the Obligors under this Agreement or any default under the Loan Documents other than any Existing Defaults, the forbearance shall terminate upon five (5) days written notice to the Obligors, and the Lender may subsequently proceed with liquidation of all Collateral and the institution of appropriate collection actions.  Nothing contained in this Agreement shall be construed to waive any Existing Defaults by the Obligors, or to limit or waive any rights that the Lender may have against them as a consequence of such defaults, except as expressly set forth herein.  The Obligors acknowledge and agree that anything herein to the contrary notwithstanding, this Agreement is not intended to be, and shall not be deemed or construed to be, a limitation, novation or release of the rights and remedies which the Lender has under the UCC or other applicable law or the Loan Documents, respectively, or any of them.

10.    **Financial Reporting.**  The Obligors shall provide the Lender with all financial information reasonably requested by the Lender, including without limitation a current depreciation schedule for the Collateral.

11.    **Release of the Lender.**  TO INDUCE THE LENDER TO ENTER INTO THIS AGREEMENT, THE OBLIGORS DO HEREBY JOINTLY AND SEVERALLY RELEASE, ACQUIT AND FOREVER DISCHARGE THE LENDER AND ITS OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, SUCCESSORS AND ASSIGNS, FROM ANY AND ALL LIABILITIES, CLAIMS, DEMANDS, ACTIONS OR CAUSES OF ACTION OF ANY KIND OR NATURE (IF THERE BE ANY), WHETHER ABSOLUTE OR CONTINGENT, DISPUTED OR UNDISPUTED, AT LAW OR IN EQUITY, OR KNOWN OR UNKNOWN, THAT EACH OF THE OBLIGORS HAS AS OF THE EFFECTIVE DATE AGAINST THE LENDER ARISING UNDER OR IN CONNECTION WITH THE LOAN DOCUMENTS AND ARRANGEMENTS DISCUSSED HEREIN OR OTHERWISE.

12.    **Adequate Consideration.**  The Obligors hereby acknowledge and agree that: (i) prior to giving effect to this Agreement, certain events of default existed under the Loan Documents allowing the Lender immediately to exercise certain rights and remedies to collect the Obligations; (ii) the Obligors had an opportunity to consult counsel of their own choosing and has reviewed directly the terms and conditions of this Agreement, and (iii) the agreed forbearance and extended time for repayment of the Obligations granted by the Lender hereunder constitutes full and adequate consideration for the execution and delivery by the Obligors of this Agreement.

13.    **Indemnification.**  If, after receipt of any payment from the Obligors for any indebtedness owed by the Obligors, the Lender is compelled to surrender such payment to any person or entity for any reason (including, without limitation, a determination that such payment is void or voidable as a preference or fraudulent conveyance, an impermissible setoff, or a diversion of trust funds), then the Obligors shall be liable for, and shall indemnify, defend and hold harmless the Lender with respect to the full amount so surrendered relating to the Obligors,

01129470.1                                    4

including any fees and costs incurred by the Lender in connection therewith. The provisions of this section shall survive the termination of this Agreement and the other Loan Documents and shall be and remain effective notwithstanding the payment of the Obligations, the cancellation of any Loan Document, the release of any lien, security interest or other encumbrance securing such Obligations or any other action which the Lender may have taken in reliance upon the receipt of such payment. Any cancellation of a note, release of any such encumbrance or other such action shall be deemed to have been conditioned upon any payment having become final and irrevocable.

14. **Representations and Warranties**. To induce the Lender to enter into this Agreement and as partial consideration for the terms and conditions contained herein, the Obligors make the following representations and warranties, each and all of which shall survive the execution and delivery of this Agreement and all of the other documents executed in connection herewith:

(a) **Organization**.

(1) The Borrowers, **CONGRESS STREET PROPERTIES, LLC**, and **NORTHGATE PROPERTIES, LLC,** are Mississippi limited liability companies duly established and validly existing and in good standing under the laws of the State of Mississippi, and are duly authorized to do business and are duly qualified in all jurisdictions wherein the nature of their business or properties makes such qualification necessary, and have the corporate power to own their properties and to carry on their respective businesses as now conducted; and further, that **ISAAC K. BYRD JR,** is duly authorized to act, and enter into this agreement, on behalf of all Obligors;

(2) The Obligors each have the requisite power and authority to deliver and perform this Agreement and any documents executed by it in connection herewith.

(b) **Authorization; Valid and Binding Agreement**. All actions required to be taken by the Obligors for the authorization, execution, delivery and performance of this Agreement and any other documents contemplated hereby have been taken. The person executing this Agreement on behalf of each of the Obligors is duly authorized. This Agreement is, and any documents executed pursuant hereto will be, legal, valid, and binding obligations of the party or parties thereto, enforceable against each such party in accordance with their respective terms, subject only to bankruptcy, insolvency, reorganization, moratorium and other laws or equitable principles affecting creditors' rights generally.

(c) **Third Party Consents**. The execution, delivery and performance by the Obligors of this Agreement and the documents related thereto will not:

(1) require any consent or approval of any person or entity which has not been obtained prior to, and which is not in full force and effect as of, the date of this Agreement;

(2)    result in the breach of, default under, or cause the acceleration of any obligation owed under any loan, credit agreement, note, security agreement, lease indenture, mortgage, loan document or other agreement by which any of them are bound or affected; or

(3)    result in, or require the creation or imposition of, any lien or encumbrance on any of its properties other than those liens or security interests in favor of the Lender.

15.    **Bankruptcy**.

(a)    **Statement of Intent**. The Obligors each warrant and represent that they have no present intent: (i) to file any voluntary petition in bankruptcy under any Chapter of the Bankruptcy Code, nor do they have any knowledge that the filing of any involuntary petition in bankruptcy against either is threatened or imminent; (ii) to seek relief, protection, reorganization, liquidation, dissolution, or similar relief for debtors under any federal, state, or local law, or in equity, or (iii) to cause their respective assets to be the subject of any bankruptcy or insolvency proceedings or the property of any bankruptcy or insolvency estate.

(b)    **Relief From Stay**. The Obligors each acknowledge and agree that in the event any assets of the Obligors in which the Lender holds a security interest shall become the subject of any bankruptcy or insolvency estate, then: (i) the Obligors shall not oppose any request by the Lender to obtain an order from the court granting relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code so as to permit the exercise all of rights and remedies pursuant to the Loan Documents, all security agreements or other loan documents, and at law and in equity; and (ii) the occurrence or existence of any event of default under this Agreement shall, in and of itself, constitute "cause" for relief from the automatic stay pursuant to the provisions of Section 362(d)(1) of the Bankruptcy Code, based on the fact that the non-existence of a bankruptcy proceeding was a material inducement for the entry by the Lender into this Agreement.

(c)    **Automatic Stay**. The Obligors each acknowledge and agree that in the event of the filing of any voluntary or involuntary petition in bankruptcy by or against one of them, the other shall not assert or request that any other party assert that the automatic stay provided by Section 362 of the Bankruptcy Code shall operate or be interpreted to stay, interdict, condition, reduce, or inhibit the ability of the Lender to enforce any rights or remedies held by virtue of the Loan Documents, this Agreement, or applicable law.

16.    **Other Representations and Warranties**. The Obligors do hereby reaffirm all of their representations and warranties contained in the Loan Documents, and warrant that such representations and warranties, not otherwise rendered untrue by the events of default as disclosed herein, are true and correct as of the date of this Agreement (it being understood that any representation or warranty made as of a specific date shall be true and correct in all material respects as of such specified date).

17.    **Survival of Representations and Warranties**.    All representations and warranties of the Obligors contained in this Agreement and in all other documents and

01129470.1                                        6

instruments executed in connection herewith or otherwise relating to this Agreement shall survive the execution of this Agreement and are material and have been or will be relied upon by the Lender, notwithstanding any investigation made by any person, entity or organization on behalf of the Lender. No implied representations or warranties are created or arise as a result of this Agreement or the documents comprising or relating to this Agreement.

18.    **Cooperation; Other Documents**.  At all times following the execution of this Agreement, the Obligors shall execute and deliver, or shall cause to be executed and delivered, and shall do or cause to be done all such other acts and things as the Lender may reasonably deem to be necessary or desirable to assure the Lender of the benefit of this Agreement and the documents comprising or relating to this Agreement.

19.    **Remedies Cumulative; No Waiver.**  The respective rights, powers and remedies of the Lender in this Agreement and in the Loan Documents are cumulative and not exclusive of any right, power or remedy provided by law or equity, and no failure or delay on the part of the Lender in the exercise of any right, power or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof, or the exercise of any other right, power or remedy. Nothing contained in this Agreement or in any prior communications between the Obligors and the Lender shall constitute a waiver or modification of any rights or remedies that the Lender may have under the Loan Documents or applicable law. The Lender expressly reserves and preserves all of its rights and remedies.

20.    **Waiver of Marshaling**.  The Obligors each further acknowledge and agree that all of the Loan Documents will continue to secure the Obligations, and the Obligors have heretofore waived, and do hereby waive, any right for a marshaling of any of the Collateral now or hereafter subject to the liens and security interests of the Loan Documents.

21.    **Termination of Liens**.  In recognition of Lender's right to have all its attorneys' fees and other expenses incurred in connection with the Obligations, including without limitation, the preparation, negotiations and drafting of this Agreement, secured by the Collateral, notwithstanding payment in full of all Obligations by Obligors, Lender shall not be required to record any terminations or satisfactions of any of its liens on the Collateral unless and until each of the Obligors have executed and delivered to Lender releases of all claims, known and unknown which exist as of the date thereof as provided for in this Agreement.  **Obligors understand that this provision constitutes a waiver of their rights.**

22.    **Notices**.  Any written notice required to be given under this Agreement shall be sent to the following by mail and by facsimile, and shall be deemed given upon such mailing and sending by facsimile:

If to the Borrower:

   Isaac K. Byrd Jr
   427 East Fortification Street
   Jackson, MS   39201

01129470.1                                   7

modify the rights, remedies and obligations of the Lender and the Obligors pursuant to any loan or security agreement, guaranty or debt instrument, except to the extent expressly set forth herein. This Agreement shall inure to the benefit of, and be binding upon, the representatives, successors and assigns of the parties hereto, respectively. The parties each acknowledge that they have read and understand this Agreement, that they have had the ability to consult with an attorney of their own choosing, and that they execute this Agreement voluntarily. This Agreement may be executed in whole or in counterparts, each of which shall be an original but all of which, when taken together, shall constitute but one agreement.

24.    **Governing Law.**    This Agreement shall be construed in accordance with, and shall in all respects be governed by, the laws of the State of Mississippi. The Obligations owing under the respective Loan Documents are payable to the Lender by the Obligors at the Lender's place of business (as above indicated) in Birmingham, Alabama, and the Loan Documents and this Agreement shall be enforceable in the state and federal courts presiding in Hinds County, Mississippi, and any other court of competent jurisdiction.

25.    ***WAIVER OF JURY TRIAL.*** THE OBLIGORS AND THE LENDER HEREBY EXPRESSLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LAWSUIT OR OTHER COURT ACTION RELATED TO THE LOAN, THIS AGREEMENT, ANY OF THE LOAN DOCUMENTS OR ANY TRANSACTION CONTEMPLATED HEREBY OR THEREBY, INCLUDING, WITHOUT LIMITATION, IN RESPECT TO ANY CLAIM, COUNTERCLAIM, THIRD-PARTY CLAIM, DEFENSE, OR SET-OFF ASSERTED IN ANY SUCH LAWSUIT OR COURT ACTION. ANY SUCH LAWSUIT OR COURT ACTION SHALL BE TRIED EXCLUSIVELY TO A COURT WITHOUT A JURY. THE OBLIGORS SPECIFICALLY ACKNOWLEDGE THAT ITS EXECUTION OF THIS WAIVER OF JURY TRIAL IS A MATERIAL PORTION OF THE CONSIDERATION RECEIVED BY THE LENDER IN EXCHANGE FOR ITS ENTERING INTO THIS AGREEMENT.

**[signature page to follow]**

**IN WITNESS WHEREOF**, the parties hereto have hereunto set their names and seals, all as of the day and year first above written.

**ACCEPTED AND AGREED TO AS OF THE** 17ᵀʰ **DAY OF MARCH, 2005.**

"The Lender":

          **WACHOVIA BANK, NATIONAL ASSOCIATION**

          By: _____
          Its: _____V.P._____

"The Borrower":

          **CONGRESS STREET PROPERTIES, LLC**

          By: _____
          Its: _____

"The Borrower":

          **NORTHGATE PROPERTIES, LLC**

          By: _____
          Its: _____

"The Borrower":

          **ISAAC K. BYRD JR**

"The Guarantor":

          **ISAAC K. BYRD JR**

01129470.1

10

STATE OF ALABAMA            )

JEFFERSON COUNTY            )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that _Robert L. White_____, whose name as _Vice President_____ of **WACHOVIA BANK, NATIONAL ASSOCIATION**, successor by merger to SouthTrust Bank, a national banking association, is signed to the foregoing Agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of said Agreement, he, as such officer and with full authority, executed the same voluntarily for, and as the act of, said banking association.

Given under my hand and official seal, this the _2nd_ day of March, 2005.

_____
Notary Public

My Commission expires:

_____
My Commission Expires
April 18, 2005.

STATE OF MISSISSIPPI      )

_Hinds_____ COUNTY      )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that _Isaac K. Byrd_____, whose name as _Chairperson of the Board_ of **CONGRESS STREET PROPERTIES, LLC**, a Mississippi limited liability company, is signed to the foregoing Agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of said Agreement, he, as such officer and with full authority, executed the same voluntarily for, and as the act of, said company.

Given under my hand and official seal, this the _17th_ day of March, 2005.

_____
Notary Public

My Commission expires:

_____

STATE OF Mississippi          )

_Hinds'_____ COUNTY    )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that **ISAAC K. BYRD**, whose name is signed to the foregoing Agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of said Agreement, he executed the same voluntarily.

Given under my hand and official seal, this the _17th_ day of March, 2005.

Notary Public

My Commission expires: _____

STATE OF ~~TENNESSEE~~ _Mississippi_    )

_Hinds_____ COUNTY    )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that _Isaac K. Byrd_____, whose name as _Chairperson of the Board_ of **NORTHGATE PROPERTIES, LLC**, a Mississippi limited liability company, is signed to the foregoing Agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of said Agreement, he, as such officer and with full authority, executed the same voluntarily for, and as the act of, said corporation.

Given under my hand and official seal, this the _17th_ day of March, 2005.

Notary Public

My Commission expires: _____

01129470.1                              12

**EXHIBIT "A"**

Loan Status as of 3/4/05:

| Loan | Principal | Interest | Past Due Date | Past Due Amount | Insurance | Past Due Amount | Per Diem |
|------|-----------|----------|---------------|-----------------|-----------|-----------------|----------|
| Byrd 1 | $1,303,739.17 | $17,199.55 | 12/29/04 | $27,966.87 | $ 7,425.00 | $35,391.87 | $181.07 |
| Byrd 2 | 468,572.40 | 1,718.10 | 2/28/05 | 4,865.08 | 19,800.00 | 24,665.08 | 71.59 |
| Cotton | 50,254.03 | 1,770.40 | 11/18/04 | 6,560.84 | | 6,560.84 | 0.92 |
| Baldwin | 4,109.96 | 157.40 | 11/17/04 | 765.44 | | 765.44 | 13.77 |
| | | | | | TOTAL | $67,383.23 | $267.35 |

Byrd Property Taxes 2004 as of 3-4-05:

| NORTHGATE | | 939 | |
|-----------|-----|-----|-----|
| Parcel # | Tax | Parcel # | Tax |
| 430-10-4 | $ 371.60 | 39-51 | $ 399.79 |
| 430-10-5 | 3,469.28 | 39-55 | 20,883.68 |
| 430-11 | 1,986.15 | 39-57 | 714.84 |
| 430-12 | 18,791.97 | 39-58 | 243.45 |
| 430-14 | 46,831.53 | | |
| 433-310 | 25.63 | | |
| Sub-Total | $71,476.16 | | $22,241.76 |
| 1% Interest[1] @ 2 months | 1,429.52 | | 444.84 |
| Taxes Total | $72,905.68 | | $22,686.60 |

TOTAL AMOUNT DUE AS OF 3/4/05:

| | Past Due Amount | Per Diem |
|--|-----------------|----------|
| Loan Total | $ 67,383.23 | $267.35 |
| Taxes Total | $ 95,592.28 | |
| Cost, Expenses and Attorney's Fees | $ 9,509.80 | |
| TOTAL AS OF 3/4/05 | $172,485.31 | |

---

[1]Interest is 1% per month or any part of a month. After property sold in August, penalty is 1½% per month.

*0991000158102000000001800012*

## PROMISSORY NOTE



| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $618,000.00 | 04-29-2002 | 04-29-2007 | 0000000018 | 0001 / 138 | 1000158102 | MA9 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** CONGRESS STREET PROPERTIES LLC (SSN:
64-0940710)
427 East Fortification Street
Jackson, MS 39201

**Lender:** SouthTrust Bank
Commercial Loans-Jackson
400 East Capitol Street Suite 101
Jackson, MS 39201
(601) 355-7992

---

**Principal Amount: $618,000.00**          **Initial Rate: 4.750%**          **Date of Note: April 29, 2002**

**PROMISE TO PAY.** CONGRESS STREET PROPERTIES LLC ("Borrower") promises to pay to SouthTrust Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Eighteen Thousand & 00/100 Dollars ($618,000.00), together with interest on the unpaid principal balance from April 29, 2002, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 59 principal payments of $3,433.33 each and one final principal and interest payment of $417,132.77. Borrower's first payment is due May 29, 2002, and all subsequent principal payments are due on the same day of each month after that. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 29, 2002, with all subsequent interest payments to be due on the same day of each month after that. Borrower's final payment due April 29, 2007, will be for all principal and all accrued interest not yet paid. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the "base rate". The term "base rate" means the rate of interest designated by the Lender periodically as its Base Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. The frequency of any interest rate change is further defined below in paragraph titled "VARIABLE RATE CHANGE FREQUENCY". Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.750% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, resulting in an initial rate of 4.750% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: The Borrower may prepay the Note in whole or in part at any time during the term of the Note; provided any such prepayment shall be applied in the inverse order of scheduled maturities and provided further, if prepayment occurs with the proceeds of a loan from another banking institution, any such prepayment must be accompanied by a prepayment premium equal to five percent (5.0%) of the outstanding principal balance prepaid if prepayment occurs during the first year of the term of the Note, four (4.0%) of the outstanding principal balance prepaid if prepayment occurs during the second year of the term of the Note, three percent (3.0%) of the outstanding principal balance prepaid if prepayment occurs during the third year of the term of the Note, two (2%) of the outstanding principal balance during the fourth year of the term of the Note and one percent (1.0%) of the principal amount prepaid if prepayment occurs during year five (5) of the term of the Note. Notwithstanding anything herein to the contrary, no prepayment premium shall be due in the event the Borrower prepays the Note at any time during the term of the Note if such prepayment is made in connection with (i) the sale of the Collateral, or (ii) a loan or credit provided to the Borrower by another "non-bank" lender which loan is non-recourse as to the Guarantors named herein. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: SouthTrust Bank, Commercial Loans-Jackson , 400 East Capitol Street Suite 101, Jackson, MS 39201.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note. Upon default, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

EXHIBIT

B-1

*0991000158102000000001800012\2*

**PROMISSORY NOTE**
(Continued)

Loan No: 0000000018

Page 2

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. (Initial Here ~~_____~~ )

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Mississippi. This Note has been accepted by Lender in the State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by First Deed of Trust dated April 29, 2002 on 939 President Street, Jackson, Hinds County, Mississippi; Assignment of Rents & Leases dated April 29, 2002; Commercial Guaranty executed by Isaac K. Byrd, Jr.

**CHANGE IN OWNERSHIP.** Any aggregate change of twenty-five (25%) or more in the ownership of the common stock or other ownership interest in Borrower in any period of 12 consecutive months shall constitute a default under this loan.

**FINANCIAL STATEMENTS.** Until this loan is paid in full, Borrower will furnish to Lender, as soon as available but in any event within 120 days after the end of each fiscal year, Borrower's balance sheet and statements of income, cash flows and changes in capital for the fiscal year just ended, setting forth in comparative form the corresponding figures for the prior year, together with accompanying schedules and footnotes. If the financial statements were compiled or certified by a public accountant, Borrower will also furnish Lender the accountant's letter accompanying the financial statements. Borrower will furnish to Lender, as soon as available but in any event within 30 days after the end of the first three quarters of Borrower's fiscal year, Borrower's balance sheet and profit and loss statement for the quarter just ended. All financial reports provided to Lender will be certified in writing by the chief executive officer, chief financial officer, managing partner or comparable financial officer of Borrower to be true and complete to the best of his or her knowledge and belief and to have been prepared in accordance with generally accepted accounting principles applied on a basis consistent with the financial statements previously furnished to Lender or, if not so prepared, setting forth the manner in which the financial statements depart therefrom. Borrower will furnish Lender, within 30 days after Lender's request therefor, a copy of the federal income tax return most recently filed by Borrower. Borrower will cause each guarantor or endorser of this loan to furnish to Lender, within 30 days after Lender's request therefor, a current financial statement of such guarantor or endorser in form acceptable to Lender and a copy of the federal income tax return most recently filed by such guarantor or endorser.

**OBLIGATION TO DEVELOP BUSINESS PLAN.** Before approving this loan, Lender required Borrower to furnish Lender with financial statements and other information concerning the financial history and future prospects of Borrower's business. Lender requested and reviewed that information solely to enable it to make a decision whether to extend credit. Borrower understands that Lender has not necessarily approved Borrower's business plan and has not undertaken any duty or obligation to advise Borrower on business matters now or in the future. Lender is not a financial or business advisor, and Borrower will not look to Lender for business advice. Lender's role is solely that of a Lender, and Borrower's relationship with Lender is that of debtor and creditor. Lender expressly disclaims any fiduciary or other duties or obligations to Borrower except those expressly provided in the written loan documents signed by Lender.

**NO ORAL AGREEMENTS.** Lender's agreement to lend, Borrower's obligation to repay the loan, and all other agreements between Lender and Borrower have been reduced to writing. This instrument and the other documents signed concurrently with it contain the entire agreement between Lender and Borrower. Any prior conversations and discussions that Lender or Borrower may have had concerning the transaction are not binding unless reflected in the written loan documents. Borrower acknowledges that the loan documents reflect everything the Lender has agreed to do or not to do in connection with this transaction.

**COMMERCIAL PURPOSES.** Borrower intends to use the loan proceeds solely for business or commercial related purposes and under no circumstances will such proceeds be used for personal, family or household purposes.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES..** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: SouthTrust Bank, Commercial Loans-Jackson , 400 East Capitol Street Suite 101, Jackson, MS 39201

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

CONGRESS STREET PROPERTIES LLC

By: _____
Isaac K. Byrd, Jr., President/CEO of CONGRESS
STREET PROPERTIES LLC

*13610001581020000000018000124*

## COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 0001 / 139 | 1000158102 | MA9 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** CONGRESS STREET PROPERTIES LLC (SSN: 64-0940710)
427 East Fortification Street
Jackson, MS 39201

**Lender:** SouthTrust Bank
Commercial Loans-Jackson
400 East Capitol Street Suite 101
Jackson, MS 39201
(601) 355-7992

**Guarantor:** ISAAC K. BYRD, JR. (SSN: ████████7031)
427 EAST FORTIFICATION
JACKSON, MS 39201

**AMOUNT OF GUARANTY. The amount of this Guaranty is Unlimited.**

**CONTINUING UNLIMITED GUARANTY. For good and valuable consideration, ISAAC K. BYRD, JR. ("Guarantor") absolutely and unconditionally guarantees and promises to pay to SouthTrust Bank ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of CONGRESS STREET PROPERTIES LLC ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.**

**INDEBTEDNESS GUARANTEED.** The Indebtedness guaranteed by this Guaranty includes any and all of Borrower's indebtedness to Lender and is used in the most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations and debts to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

In addition to the waivers set forth herein, if now or hereafter Borrower is or shall become insolvent and the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and gives up, in favor of Lender and Borrower, and Lender's and Borrower's respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11



**EXHIBIT**
B-2

*13610001581020000000016000124*

**COMMERCIAL GUARANTY**
(Continued)

Loan No: 0000000018

Page 2

U.C.S. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.** This Guaranty will be governed by, construed and enforced in accordance with federal law and the laws of the State of Mississippi. This Guaranty has been accepted by Lender in the State of Mississippi.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any Loan Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

*13610001581020000000018000124*

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 0000000018

Page 3

Waive Jury. Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. (Initial Here ▒▒▒▒▒ )

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means CONGRESS STREET PROPERTIES LLC, and all other persons and entities signing the Note in whatever capacity.

**Guarantor.** The word "Guarantor" means each and every person or entity signing this Guaranty, including without limitation ISAAC K. BYRD, JR..

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means SouthTrust Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated April 29, 2002, in the original principal amount of $618,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED APRIL 29, 2002.**

GUARANTOR:

X _[signature]_
ISAAC K. BYRD, JR., Individually

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Mississippi_ )
                                          ) SS
COUNTY OF _Hinds_ )

Personally appeared before me, the undersigned authority in and for the said County and State, on this _29th_ day of _April_, 20 _02_, within my jurisdiction, the within named ISAAC K. BYRD, JR., who acknowledged that he or she signed, executed and delivered the above and foregoing Guaranty for the purposes mentioned on the day and year therein mentioned.

_Dorothy C. Brooks_
NOTARY PUBLIC

My Commission Expires _____

[Notary seal: DOROTHY C. BROOKS, HINDS COUNTY, NOTARY PUBLIC, My Commission Expires March 17, 2005]

LASER PRO Lending, Ver. 5.20.00.07 Copr. Harland Financial Solutions, Inc. 1997, 2002. All Rights Reserved. - MS L:\CFI\LPL\E20.FC  TR-10318  PR-1

*099100013995000000042000123*

# PROMISSORY NOTE

W.P.# 78107859

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,308,333.41 | 09-29-2004 | 09-29-2005 | 0000000042 | 0001 / 139 | 1000139995 | MA9 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ISAAC K. BYRD, JR. (SSN: ~~████~~);
CONGRESS STREET PROPERTIES, LLC (TIN:
64-0940710); and NORTHGATE PROPERTIES, LLC
(TIN: 64-0938858)
427 EAST FORTIFICATION
JACKSON, MS 39201

**Lender:** SouthTrust Bank
Commercial Loans-Jackson
188 East Capital Street Suite 100
Jackson, MS 39201
(601) 355-7892

---

**Principal Amount: $1,308,333.41     Interest Rate: 5.000%     Date of Note: September 29, 2004**

**PROMISE TO PAY.** ISAAC K. BYRD, JR.; CONGRESS STREET PROPERTIES, LLC; and NORTHGATE PROPERTIES, LLC ("Borrower") jointly and severally promise to pay to SouthTrust Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Three Hundred Eight Thousand Three Hundred Thirty-three & 41/100 Dollars ($1,308,333.41), together with interest at the rate of 5.000% per annum on the unpaid principal balance from September 29, 2004, until paid in full.

**PAYMENT.** Borrower will pay this loan in 11 regular payments of $8,689.12 each and one irregular last payment estimated at $1,278,176.14. Borrower's first payment is due October 29, 2004, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 29, 2005, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the rate of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: SouthTrust Bank, Commercial Loans-Jackson , 188 East Capital Street Suite 100, Jackson, MS 39201.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note. Upon default, the total sum due under this Note will bear interest from the date of acceleration or maturity at the interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. (Initial Here _____ )

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Mississippi. This Note has been accepted by Lender in the State of Mississippi.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether

---

**EXHIBIT**

C

*0991000138995000000042000123*

# PROMISSORY NOTE
## (Continued)

Loan No: 0000000042                                                                     Page 2

checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by Deed of Trust dated May 2, 2002 on Commercial Property located at 4330 and 4436 North State Street, Jackson, Mississippi 39206, recorded in Book 5564, Page 342 in the office of the Chancery Clerk of Hinds County, Mississippi and Modification of Deed of Trust dated June 16, 2004 and recorded August 10, 2004 in Book 6081, Page 253 in the Office of the Chancery Clerk of Hinds County, Mississippi and Modification of Deed of Trust dated September 29, 2004; Deed of Trust dated April 29, 2002 on Commercial Property located at 939 North President Street, Jackson, Mississippi 39201 and recorded May 9, 2002 in Book 5590 Page 145 in the Office of the Chancery Clerk, Hinds County, Mississippi; Assignment of Rents and Leases dated September 29, 2004 on Property located at 4330 and 4436 North State Street, Jackson, Mississippi 39206 and Assignment of Rents and Leases dated September 29, 2004 on Property located at 939 North President Street, Jackson, Mississippi 39201 .

**FINANCIAL STATEMENTS.** Until this loan is paid in full, Borrower will furnish to Lender, as soon as available but in any event within 120 days after the end of each fiscal year, Borrower's balance sheet and statements of income, cash flows and changes in capital for the fiscal year just ended, setting forth in comparative form the corresponding figures for the prior year, together with accompanying schedules and footnotes. If the financial statements were compiled or certified by a public accountant, Borrower will also furnish Lender the accountant's letter accompanying the financial statements. Borrower will furnish to Lender, as soon as available but in any event within 30 days after the end of the first three quarters of Borrower's fiscal year, Borrower's balance sheet and profit and loss statement for the quarter just ended. All financial reports provided to Lender will be certified in writing by the chief executive officer, chief financial officer, managing partner or comparable financial officer of Borrower to be true and complete to the best of his or her knowledge and belief and to have been prepared in accordance with generally accepted accounting principles applied on a basis consistent with the financial statements previously furnished to Lender or, if not so prepared, setting forth the manner in which the financial statements depart therefrom. Borrower will furnish Lender, within 30 days after Lender's request therefore, a copy of the federal income tax return most recently filed by Borrower. Borrower will cause each guarantor or endorser of this loan to furnish to Lender, within 30 days after Lender's request therefore, a current financial statement of such guarantor or endorser in form acceptable to Lender and a copy of the federal income tax return most recently filed by such guarantor or endorser.

**OBLIGATION TO DEVELOP BUSINESS PLAN.** Before approving this loan, Lender required Borrower to furnish Lender with financial statements and other information concerning the financial history and future prospects of Borrower's business. Lender requested and reviewed that information to enable it to make a decision whether to extend credit. Borrower understands that Lender has not necessarily approved Borrower's business plan and has not undertaken any duty or obligation to advise Borrower on business matters now or in the future. Lender is not a financial or business advisor, and Borrower will not look to Lender for business advice. Lender's role is solely that of a Lender, and Borrower's relationship with Lender is that of debtor and creditor. Lender expressly disclaims any fiduciary or other duties or obligations to Borrower except those expressly provided in the written loan documents signed by Lender.

**NO ORAL AGREEMENTS.** Lender's agreement to lend, and Borrower's obligation to repay the loan, and all other agreements between Lender and Borrower have been reduced to writing. This instrument and the other documents signed concurrently with it contain the entire agreement between Lender and Borrower. Any prior conversations and discussions that Lender or Borrower may have had concerning the transaction are not binding unless reflected in the written loan documents. Borrower acknowledges that the loan documents reflect everything the Lender has agreed to do or not to do in connection with this transaction.

**COMMERCIAL PURPOSES.** Borrower intends to use the loan proceeds solely for business or commercial related purposes and under no circumstances will such proceeds be used for personal, family or household purposes.

**PRIOR NOTE.** This is a refinance of Note #1000139995-34 between Issac K. Byrd, Jr. and SouthTrust Bank.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: SouthTrust Bank, Commercial Loans-Jackson . 188 East Capital Street Suite 100, Jackson, MS 39201

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

*099100013999500000000042000123*

**PROMISSORY NOTE**
**(Continued)**

Loan No: 0000000042

Page 3

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X_____
ISAAC K. BYRD, JR., Individually

CONGRESS STREET PROPERTIES, LLC

By:_____
   Isaac K. Byrd, Jr., Managing Member of CONGRESS
   STREET PROPERTIES, LLC

NORTHGATE PROPERTIES, LLC

By:_____
   Isaac K. Byrd, Jr., Managing Member of
   NORTHGATE PROPERTIES, LLC

LASER PRO Lending, Ver. 5.24.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - MS  L:\CFI\WIN\CFI\LPL\D20.FC  TR-90087  PR-1